RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0304P (6th Cir.)
File Name: 02a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant/*
  *Cross-Appellee,*

  *v.*

JACK WILLIAM TOCCO,
  *Defendant-Appellee/*
  *Cross-Appellant.*

Nos. 00-1727/1757

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-80201—John Corbett O'Meara, District Judge.

Argued: April 26, 2002

Decided and Filed: September 6, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
ECONOMUS, District Judge.

---

[*]The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

————————————

**COUNSEL**

**ARGUED:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Frank D. Eaman, BELLANCE & BEATTIE, Harper Woods, Michigan, for Appellee. **ON BRIEF:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Frank D. Eaman, BELLANCE & BEATTIE, Harper Woods, Michigan, for Appellee.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge. In 1998, Jack William Tocco was convicted of two counts of conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), and one count of conspiracy in violation of the Hobbs Act, 18 U.S.C. § 1951, and he was sentenced to twelve months and a day of imprisonment. This court heard Tocco's appeal regarding his conviction and the government's appeal regarding Tocco's sentence in 1999, and we affirmed Tocco's conviction but vacated his sentence and remanded for resentencing. In May, 2000, the district court resentenced Tocco to thirty-four months' imprisonment. The government now appeals this sentence, and Tocco cross-appeals. For the following reasons, we again **VACATE** Tocco's sentence and **REMAND** to the district court for proceedings consistent with this opinion.

## I. BACKGROUND

The facts of this case leading up to the first appeal are set out this court's first opinion, *United States v. Tocco*, 200 F.3d 401, 410-11 (6th Cir. 2000). In brief, on March 14, 1996, Jack William Tocco ("Tocco") was indicted, along with sixteen other individuals, on twenty-five counts involving the

allegedly illegal activities of the "Detroit Cosa Nostra Family."[1]   According to the indictment, Tocco was the "Boss" of the Family, and he was personally indicted on thirteen counts of conspiracy, extortion, and attempted extortion.  On April 29, 1998, a jury in the United States District Court for the Eastern District of Michigan convicted Tocco of three counts:   (1) conspiracy to engage in racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count 1); (2) conspiracy to collect unlawful debt in violation of RICO, 18 U.S.C. § 1962(d) (Count 2); and (3) conspiracy to interfere with commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count 6).

Following Tocco's conviction, a probation officer prepared a lengthy presentence investigation report ("PSR") pursuant to the 1997 United States Sentencing Guidelines ("U.S.S.G."), recommending, in pertinent part, that Tocco be sentenced at a total offense level of 22 but also delineating "factors that may warrant departure." Joint Appendix ("J.A.") at 2354-56 (PSR).  On November 13, 1998, the district court adopted the factual findings and guideline application of the presentence report[2]; the court concluded that Tocco's total offense level was 22, but the court departed downward 10 levels, explaining that "[t]he sentence departs from the guideline range for the following reason(s):  Extraordinary

---

[1] Tocco was tried with five co-defendants:  Anthony J. Tocco, Anthony J. Corrado, Anthony J. Zerilli, Nove Tocco, and Paul Corrado. *See United States v. [Paul] Corrado*, 227 F.3d 528 (6th Cir. 2000) ("*Corrado I*"); *United States v. [Anthony J.] Corrado*, Nos. 98-2394 & 99-1001, 2000 WL 1290343 (6th Cir. Sept. 8, 2000) ("*Corrado II*"); *see also United States v. [Paul] Corrado*, 227 F.3d 543 (6th Cir. 2000) ("*Corrado III*"), *reh'g denied*, 286 F.3d 934 (6th Cir. 2002) ("*Corrado IV*") (regarding the government's forfeiture action against Paul Corrado, Jack Tocco, Vito W. Giacalone, Nove Tocco, and Anthony Corrado).

[2] Because the district court, like the PSR, relied on 1997 version of the United States Sentencing Guidelines in sentencing Tocco, all references to the Guidelines and the Commentary to the Guidelines in this opinion are to the 1997 version.

community service involvement by the defendant; the age and health condition of the defendant and the health condition of defendant's wife." J.A. at 1296. As the district court also concluded that Tocco's criminal history category was I, the court sentenced Tocco to twelve months and one day of imprisonment, two years of supervised release, and a fine of $ 75,000.[3] Tocco appealed the judgment of conviction against him, and the government appealed Tocco's sentence.[4]

This court heard the cross-appeals in Tocco's case on June 11, 1999, and on January 5, 2000, we issued an opinion affirming Tocco's conviction but vacating his sentence and remanding for resentencing. In regard to Tocco's sentence, we first noted that "we can recall no presentence report comparable to the one pertaining to Tocco in the instant case, containing what might well be construed as 'arguments' that Tocco was not involved in most of the criminal activity of which he was convicted." *Tocco*, 200 F.3d at 428. We then discussed the appropriate total offense level for Tocco, and we concluded that the district court had erred in assessing what conduct was relevant for the Count 1 RICO conspiracy base offense level because the court "made no findings whatsoever as to what criminal activities were in furtherance of the conspiracy and what activities were reasonably foreseeable by Tocco." *Id.* at 430. We also held that "the district court committed clear error in concluding that Tocco

---

[3] An amended judgment and sentence were entered on November 30, 1998. The only change was to the amount of the fine, which was increased to $ 94,447.32.

[4] Following Tocco's sentencing, the government sought forfeiture of his proceeds from the racketeering activity, pursuant to 18 U.S.C. §1963(a). The district court denied the government's forfeiture request, finding that the government had failed sufficiently to track to Tocco the monies involved in the conspiracy. In September 2000, we reversed the district court, and we instructed the court on remand to assess a total of $ 1,234,700 in forfeiture against Tocco for his involvement in the Hobbs Act conspiracy and to determine an appropriate amount of forfeiture to assess against Tocco for his involvement in the Edgewater Hotel activities. *Corrado III*, 227 F.3d at 558.

of the acts of extortion as relevant conduct for the purpose of his Count 1 RICO conspiracy base offense level, at minimum, Tocco's base offense level for the Count 1 RICO conspiracy must be 24.[17] In combination with Tocco's offense level of 19 for Count 2 and Tocco's minimum offense level of 21 for Count 6, under U.S.S.G. § 3D1.4 Tocco's total offense level must be at least 25.

---

[17] In accordance with our opinion in this case, Tocco *must* be held accountable for the following underlying racketeering activities as relevant conduct for the purpose of his Count 1 RICO conspiracy base offense level: the Frontier Hotel activities (offense level 6); the Versaci Gambling Operation with a four-level aggravating role enhancement (offense level 16); the Edgewater Hotel activities (offense level 6); the Hobbs Act conspiracy (offense level 21); and one act of extortion (offense level 21). Pursuant to U.S.S.G. § 3D1.4, these combine for a base offense level of 24.

In considering again the departure downward based on the defendant's health needs, the court concludes in May 2000 that those health needs are not so extraordinary or requiring that such a departure would now be appropriate. . . . The court concludes from the evidence at these more recent hearings that no downward departure based upon Mr. Tocco's health would be appropriate. . . . Similarly, the court's two-level departure downward based upon the mental and physical health problems of the defendant's spouse has been reconsidered. Based upon the witness called by the defendant to give testimony at the provisional hearings this year . . . and particularly the testimony elicited by the government's cross-examination, the court concludes that a downward departure based upon Mrs. Tocco's health would be inappropriate at this time.

J.A. at 264-65. Although the court does not state explicitly that it understands that it has the discretion to depart downward, it is clear from the above statement that the district court deemed a downward departure on the basis of Tocco's and his wife's health unwarranted. We have held that where the district court finds, based on the facts in the record, that a requested downward departure is unwarranted, it implicitly recognizes its discretion to depart downward, and, therefore, we cannot review such a failure to depart downward on appeal. *See United States v. Jones*, 102 F.3d 804, 809 (6th Cir. 1996); s*ee also United States v. Abdullah*, 162 F.3d 897, 905 (6th Cir. 1998) (holding that district court's decision was unreviewable where district court "entertained argument" and "clearly expressed recognition of his discretion to depart").

## III. CONCLUSION

For the foregoing reasons, we **VACATE** Tocco's sentence and **REMAND** to the district court to recalculate Tocco's Count 1 RICO conspiracy base offense level and his Count 6 Hobbs Act conspiracy offense level. We note that even if the court finds on remand that Tocco is only accountable for one

did not have a supervisory role in this case," and "instruct[ed] the district court on remand to apply the three-level enhancement . . . pursuant to U.S.S.G. § 3B1.1(b)" to Tocco's Count 6 Hobbs Act conspiracy offense level. *Id*. at 432. Finally, we addressed the district court's ten-level downward departure and stated that "[b]ased on our conclusion that the district court must revisit the sentence imposed under the guidelines, we further instruct the court to reconsider its decision to depart from the guideline range once that range has been redetermined." *Id*. Although we did not specify whether departures would be appropriate, we did discuss what factors the court would need to find in order to warrant any downward departure.

After evidentiary hearings in March, 2000, the district court on May 25, 2000, resentenced Tocco to thirty-four months' imprisonment, two years of supervised release, and a fine of $ 94,447.32. The district court determined that Tocco's total offense level was 24, and the court then departed downward four levels for "[e]xtraordinary community service involvement by the defendant." J.A. at 212. The following day, the district court issued a memorandum explaining the sentence. On June 23, 2000, the government appealed Tocco's sentence, and on June 27, 2000, Tocco cross-appealed. The government and Tocco agree that Tocco's offense level for his Count 2 RICO conspiracy conviction should be 19. The government contends, however, that the district court erred in determining the offense levels for Tocco's Count 1 RICO conspiracy and Count 6 Hobbs Act conspiracy convictions. Tocco contends that the government should not have been able to argue for the inclusion of certain offenses and enhancements as relevant conduct for his Count 1 RICO conspiracy conviction at his resentencing hearing and that the district court erred in failing to depart downward from the sentencing range for Tocco's and his wife's health.

## II. ANALYSIS

### A.  Standard of Review

This court reviews the district court's application of the United States Sentencing Guidelines de novo and the district court's findings of fact at sentencing for clear error.  *See United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002); *United States v. Vandeberg*, 201 F.3d 805, 811 n.2 (6th Cir. 2000) (applying this standard to enhancements imposed pursuant to U.S.S.G. § 3B1.1).  A district court's finding that the criminal acts of others in a jointly undertaken criminal activity are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity is reviewable for clear error.  *See Canestraro*, 282 F.3d at 433; *United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001).  However, a district court's conclusion that conduct constitutes relevant conduct is reviewable de novo.  *See United States v. Hardin*, 248 F.3d 489, 492-93 (6th Cir. 2001).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Charles*, 138 F.3d 257, 262 (6th Cir. 1998) (quotation omitted).

### B.  Count 1 — RICO Conspiracy

This court stated in its first opinion that for Tocco's RICO conspiracy counts, "[t]he appropriate offense level should be determined by reference to U.S.S.G. § 2E1.1, which provides that the base offense level for unlawful conduct related to racketeer influenced and corrupt organizations is either 19 or 'the offense level applicable to the underlying racketeering activity,' whichever is greater." *Tocco*, 200 F.3d at 428-29.[5]

---

[5]We note that in order to convict a defendant of a RICO conspiracy charge, a jury must find beyond a reasonable doubt that the defendant agreed to the commission of at least two underlying racketeering activities (or predicate acts).  *See* 18 U.S.C. § 1961(5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity").

must operate. . . . General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  In our first opinion, we explicitly instructed the district court in a number of ways. For instance, we instructed the court to impose a three-level aggravating role enhancement to Tocco's Count 6 Hobbs Act conspiracy offense level.  However, the limitations we imposed on the district court on remand did not involve either the court's assessment of underlying racketeering activity for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level or the court's assessment of appropriate bases for downward departure.

In regard to the Count 1 RICO conspiracy underlying racketeering activity assessment, we stated that:  "[W]e instruct the district court to determine which underlying offenses may properly be attributable to Tocco for purposes of sentencing." *Tocco*, 200 F.3d at 430-31.  We explicitly noted that the government argued on appeal that the Edgewater Hotel activities, the Bowman murder conspiracy, the Hobbs Act conspiracy, and the some of the acts of extortion constituted underlying racketeering activity for the purpose of calculating Tocco's Count 1 conspiracy base offense level. *Id*. at 429.  Therefore, the government's raising of those offenses at resentencing and its arguing for the four-level enhancement to the Versaci Gambling Operation offense level did not violate this court's mandate.

We also discussed the district court's downward departure from the sentencing range at length, and we instructed the court "to reconsider its decision to depart from the guideline range once that range has been redetermined." *Id*. at 432. We did not instruct the district court not to depart downward on the basis of Tocco's and his wife's health, but we strongly discouraged such departures. Thus, the district court's refusal to downward depart at resentencing on the basis of Tocco's and his wife's health was not outside the scope of our limited remand. Furthermore, the district court stated at resentencing that:

purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.[16]

## D. Tocco's Cross-Appeal

In his cross-appeal, Tocco contends that the government should not have been able to argue at resentencing for either an aggravating role enhancement to the Versaci Gambling Operation offense level or that the Edgewater Hotel activities, the Bowman murder conspiracy, the Hobbs Act conspiracy, and the acts of extortion constituted underlying racketeering activity for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level. In addition, Tocco contends that the district court should have departed downwards from his sentencing range, as it did at the first sentencing, based on Tocco's and his wife's health. Both of these arguments are based on Tocco's view that this court's previous remand to the district court was "limited." We agree with Tocco that this court's previous remand was limited. However, we do not agree that our remand limited the district court's ability to hear the government's arguments regarding Tocco's Count 1 RICO conspiracy underlying racketeering activity or to refuse to downward depart from the sentencing on the basis of Tocco's and his wife's health.

We have explained that "[l]imited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court

---

[16]We also note that in the resentencing memorandum, the district court mentioned that Tocco was acquitted for aiding and abetting the same acts of extortion that he was charged with conspiring to commit in Count 6. *See* J.A. at 262 ("Tocco was acquitted of aiding and abetting in these extortions"). The indictment did charge Tocco with ten counts of aiding and abetting specific acts of extortion. *See* J.A. at 185-88, 192, 199-201, 203-05 (Indictment, Counts 10 (Monro), 11 (Morales), 12 (Wierzba), 13 (Yaldoo), 17 (Johns), 20 (Yatooma), 21 (Martin), 23 (Abraham), 24 (Sophiea), and 25 (Calcaterra)). Tocco was aquitted on all ten counts. See J.A. at 207 (Judgment). We emphasize, however, that Tocco's culpability for aiding and abetting acts of extortion is different from his culpability for conspiring to commit those same acts.

The district court concluded at resentencing, as it concluded at Tocco's original sentencing, that Tocco's base offense level for the Count 1 RICO conspiracy was 19. At resentencing, the district court arrived at this conclusion by finding that Tocco was responsible for only two underlying racketeering offenses: (1) interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952, for activities related to the Frontier Hotel and Casino ("Frontier Hotel activities"); and (2) involvement in an illegal gambling business, in violation of 18 U.S.C. § 1955, for activities related to a gambling operation owned and operated by Frank Versaci ("Versaci Gambling Operation"). The district court found that the Versaci Gambling Operation activities and the Frontier Hotel activities constituted relevant conduct pursuant to U.S.S.G. § 1B1.3(a)(1)(B). The offense level for the Frontier Hotel activity was 6, and the offense level for the Versaci Gambling Operation was 12. *See* U.S.S.G. § 2E1.2(a) & 2E3.1(a)(1)(A). Pursuant to U.S.S.G. § 3D1.4, therefore, the district court calculated Tocco's offense level for the applicable underlying racketeering activity at 13; as this is less than 19, the district court concluded that Tocco's base offense level for the Count 1 RICO conspiracy was 19.[6]

The government argues on this appeal, as it argued on the first appeal, that the district court erred by not including the following underlying racketeering offenses in its calculation of Tocco's base offense level for the Count 1 RICO conspiracy: (1) interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952, for activities related to the Edgewater Hotel and Casino ("Edgewater Hotel activities"); (2) conspiracy to murder Harry Bowman ("Bowman murder conspiracy"), in violation of 29 U.S.C. § 1117; (3) conspiracy to interfere with commerce by extortion and nine acts of

---

[6]In *Tocco*, we explained that after determining the offense levels applicable to a defendant's underlying racketeering activity pursuant to U.S.S.G. § 2E1.1(a)(2), a court should "make the appropriate adjustments under Parts A through D of Chapter Three of the guidelines." *Tocco*, 200 F.3d at 431 (quotation omitted); *see also* U.S.S.G. § 2E.1.1, commentary, applic. note 1.

extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. In addition, the government argues that the district court should have applied a four-level enhancement for aggravating role, pursuant to U.S.S.G. § 3B1.1(a), to its calculation of Tocco's offense level for the Versaci Gambling Operation.[7]  We conclude that the district court did not clearly err in finding that the Bowman murder conspiracy did not constitute an underlying racketeering offense for the purpose of calculating Tocco's Count 1 RICO conspiracy offense level. The district court did err, however, in failing to apply a four-level aggravating role enhancement to its calculation of the offense level for the Versaci Gambling Operation and in concluding that the Edgewater Hotel activities, the Hobbs Act conspiracy, and the acts of extortion did not constitute underlying racketeering offenses for the purpose of calculating Tocco's Count 1 RICO offense level.

Racketeering activity constitutes "underlying racketeering activity" under U.S.S.G. § 2E1.1 for the purpose of calculating a defendant's base offense level for a RICO conviction if it constitutes relevant conduct as defined in U.S.S.G. § 1B1.3. *See Tocco*, 200 F.3d at 430 (holding that the relevant conduct rules apply to the determination of "underlying racketeering activity").  Relevant conduct includes, in pertinent part: (1) "all acts or omissions" that the defendant "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused"; and (2) "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," that occurred during, in preparation for, or in the course of attempting to avoid detection or responsibility for the RICO conspiracy.  U.S.S.G. § 1B1.3(a)(1)(A) & (B).  "The existence of relevant conduct is determined at sentencing by a preponderance of the evidence." *Corrado I*, 227 F.3d at 542.

---

[7]Had the district court included all of the above underlying racketeering offenses and their various enhancements as proposed by the government in its calculation of Tocco's base offense level for the Count 1 RICO conspiracy, Tocco's total offense level would have been 36.

have convicted Tocco of Count 6.  In fact, the jury instructions require as much.  J.A. at 2135 (Jury Instr.) (requiring the jury to find for Count 6 "that some member of the conspiracy did some overt act for the purpose of advancing or helping the conspiracy").[15]  Moreover, if Tocco had not conspired to commit any of the acts of extortion charged in Count 6, the district court could not have calculated Tocco's offense level for Count 6.  In calculating an offense level for a conviction on a count charging a conspiracy to commit more than one offense, the court must look to the offense levels for the offenses the defendant conspired to commit. *See* U.S.S.G. § 1B1.2(d).  Inasmuch as the court in this case concluded that Tocco's offense level for the Count 6 Hobbs Act conspiracy was 21, the court must have found that Tocco conspired to commit one of the acts of extortion charged in Count 6.

We instruct the district court on remand to reassess whether Tocco conspired to commit the various acts of extortion charged in Count 6 for the purposes of calculating his Count 6 offense level.  Because all of the acts of extortion have the same base offense level pursuant to U.S.S.G. § 2B3.2(a) and because the court must apply a three-level aggravating role enhancement to each act it finds Tocco conspired to commit pursuant to U.S.S.G. § 3B1.1(b) and our previous remand, it is possible that the court could still conclude on this remand that Tocco's offense level for Count 6 is 21.  However, we also instruct the court on remand to explain which act or acts of extortion it finds that Tocco conspired to commit.  As we explained above, any act of extortion that Tocco did conspire to commit should be included as relevant conduct for the

---

[15]The same rationale applies here as applies in regard to the jury's conclusions involving predicate acts in a RICO conspiracy conviction. However, in order to convict a defendant of conspiracy under the Hobbs Act, a jury need only find that the defendant agreed to the commission of one predicate act; as explained above, in order to convict a defendant under RICO, a jury must find that the defendant agreed to the commission of at least two predicate acts. *See supra* note 5.

been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Count 6 charged Tocco with conspiring to commit nine specific acts of extortion. Therefore, for Count 6, Tocco could have been held accountable for all nine acts of extortion listed in that Count, his offense level for that Count then being derived pursuant to U.S.S.G. § 3D1.4. The commentary to U.S.S.G. § 1B1.2 cautions, however, that:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

U.S.S.G. § 1B1.2(d), commentary, applic. note 5. As the jury verdict in this case was general for Count 6, the district court correctly applied the above standard. The court then found that for each act of extortion it "would not convict the defendant of conspiring to commit that offense." *See, e.g.,* J.A. at 249. But in order to sentence Tocco for Count 6, the court *had* to find that he conspired to commit at least one of the acts of extortion.

Count 6 of the indictment provided that:

> Defendants herein . . . did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree together and with each other, to obstruct, delay, and affect commerce . . . and the movement of articles and commodities in such commerce, by extortion, . . . in that the Defendants did agree to obtain the property of Robert Monro, Jesus Morales, George Wierzba, Ramzi Yaldoo, John Johns, George Yatooma, Sam Martin, Daniel Abraham, and George Sophiea . . . .

J.A. at 180-81. If Tocco had not conspired to commit any of the acts of extortion charged in Count 6, the jury could not

We note that the Commentary to U.S.S.G. § 1B1.3(a)(1)(B) states that "[b]ecause a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant ("the jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2. The Commentary then further states that "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendants agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3(a)(1), commentary, applic. note 2; *see also United States v. Campbell*, 279 F.3d 392, 399-400 (6th Cir. 2002).

## 1. Versaci Gambling Operation Enhancement

The district court found at resentencing that Tocco was not an "organizer, leader, manager, or supervisor" in the Versaci Gambling Operation, and, therefore, the court did not apply a four-level enhancement to the Versaci Gambling Operation offense level pursuant to U.S.S.G. § 3B1.1(a). We conclude that the district court erred in not applying the enhancement.[8] In our first opinion in this case, we held in regard to Tocco's offense level for the Count 6 Hobbs Act conspiracy that "[w]e find from a review of the record that the district court committed clear error in concluding that Tocco did not have

---

[8] We would normally review a district court's findings of fact at sentencing for clear error, and the court's legal conclusions regarding the application of the Sentencing Guidelines de novo. *See Vandeberg*, 201 F.3d at 811 n.2. However, "[b]ecause the District Court failed to articulate the factual basis for the enhancement, we are compelled to conduct a de novo review of the record and determine whether the enhancement is applicable, or whether remand for further findings is required." *Id.*

a supervisory role in this case." *Tocco*, 200 F.3d at 432. We then explained that:

> The government's theory of the case was that Nove [Tocco] and [Paul] Corrado could not engage in their extortionate activities without the permission of Tocco. . . . The jury found Tocco guilty of conspiring to commit those extortionate activities in Count Six, indicating that they found Tocco to be the "boss" or "manager" or "supervisor."

*Id*. Therefore, we instructed the district court on remand to apply a three-level aggravating role enhancement to Tocco's offense level for the Count 6 Hobbs Act conspiracy.

We believe that the same rationale applies to the four-level aggravating role enhancement for the Versaci Gambling Operation offense level. The government's theory of the gambling operation was that Tocco was the financial backer of the operation and that the other participants in the operation could not act without Tocco's permission. In fact, Tocco's *only* alleged participation in the Versaci Gambling Operation was as its organizer or leader. We recognize that because the jury verdict for the Count 1 RICO conspiracy was general, we do not know whether the jury found Tocco guilty of the conspiracy in regard to the Versaci Gambling Operation. *See United States v. Neuhausser*, 241 F.3d 460, 467 (6th Cir. 2001) ("in light of the jury's general verdict, it was not possible to say whether [the defendant] had been found guilty of conspiracy to distribute crack, marijuana, or both." (interpreting *United States v. Dale*, 178 F.3d 429, 431 (6th Cir. 1999)); *see also Corrado I*, 227 F.3d at 541 ("The jury's general verdict of guilty as to the RICO conspiracy count did not indicate whether the jury found that the defendants had actually conspired to murder Bowman."). However, the district court concluded that the Versaci Gambling Operation *was* underlying racketeering activity for the purpose of Tocco's Count 1 RICO conspiracy conviction. For the same reason, then, that we previously determined that we could not ignore the implication of the jury verdict on

The government contends that nine acts of extortion — and various specific offense characteristics — should be included as relevant conduct for the purpose of calculating Tocco's Count 1 RICO base offense level. In its resentencing memorandum, the district court did not address the acts of extortion at all in its discussion of the relevant conduct for the Count 1 RICO base offense level. Having concluded that the Count 1 RICO conspiracy and the Hobbs Act conspiracy were independent of one another, the court perhaps believed it unnecessary to explain why each act of extortion was also independent of the Count 1 RICO conspiracy. However, inasmuch as we conclude above that the Hobbs Act conspiracy and the Count 1 RICO conspiracy are not independent, it is necessary for the district court to address whether each act of extortion is relevant conduct for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.

We instruct the district court on remand to evaluate each of the nine acts of extortion that the government alleges constitute relevant conduct for Tocco's Count 1 RICO conspiracy base offense level pursuant to U.S.S.G. § 1B1.3. We note that in accordance with our discussion, *infra*, the district court must find that Tocco is accountable for at least one of the alleged acts of extortion. For that extortion act and any other extortion act the court finds Tocco accountable for, then, the court must also determine whether Tocco is accountable for any specific offense characteristics pursuant to U.S.S.G. § 1B1.3.

## C.  Count 6 — Hobbs Act Conspiracy

The district court concluded that Tocco's offense level for his Count 6 Hobbs Act conspiracy conviction was 21; the court concluded that Tocco's base offense level for the conspiracy was 18 pursuant to U.S.S.G. § 2B3.2(a), and the court applied a three-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(b). Under U.S.S.G. § 1B1.2(d) "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had

street tax proceeds." *Corrado III*, 227 F.3d at 555. We explained that:

> The entire illegal scheme [of extortion] could not have succeeded were it not for the support, or the use of the name and the reputation of, the conspiratorial enterprise. Witnesses testified that they believed that Nove [Tocco] and Paul [Corrado] were supported by the larger organization of which they were a part. Recorded conversations between Nove and Paul indicate that they were working with (or for), or were empowered by, the "capos" Jack Tocco and Anthony Corrado. . . . [T]he evidence showed that the scheme was related to the entire criminal enterprise of which these defendants were active members.

*Id*. As this holding is binding on us in this appeal, we conclude that the district court clearly erred in finding that the Hobbs Act conspiracy and the Count 1 RICO conspiracy were independent, and the court therefore also erred in not including the Hobbs Act conspiracy as relevant conduct for the purpose of calculating Tocco's Count 1 RICO base offense level.

We instruct the district court on remand to include the Hobbs Act conspiracy as an underlying offense in calculating Tocco's Count 1 RICO conspiracy base offense level.

### 5. Hobbs Act Object Offenses

The district court does not appear to have considered whether the acts of extortion alleged in connection with the Hobbs Act conspiracy were relevant conduct for the purpose of determining Tocco's Count 1 RICO conspiracy base offense level. Instead, the court only addressed the acts of extortion in connection with determining Tocco's Count 6 Hobbs Act conspiracy offense level. We conclude that the district court erred by failing to address whether each act of extortion was relevant conduct for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.

Count 6, we cannot ignore the implication of the district court's conclusion that the Versaci Gambling Operation was an underlying offense of Tocco's Count 1 RICO conspiracy conviction. If Tocco indeed agreed to the commission of the Versaci Gambling Operation — as the district court found that he did — then he must have done so as an organizer or leader of the operation.

We instruct the district court on remand to apply a four-level aggravating role enhancement to the Versaci Gambling Operation offense level for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.[9]

### 2. Edgewater Hotel Acts

The district court found that the alleged acts involving the Edgewater Hotel were not relevant conduct for the purpose of determining Tocco's Count 1 RICO conspiracy base offense level because "they were not, as to [Tocco], reasonably foreseeable acts in furtherance of the RICO conspiracy." J.A. at 240. We hold that the district court clearly erred in this finding. In our opinion regarding the government's appeal of the district court's forfeiture decisions, we explained that "the 'shall forfeit' language of [18 U.S.C. § 1963(a)] mandates that a district court assess forfeiture against the defendant when the facts support a finding of a sufficient nexus between

---

[9] We note that we conclude here that a different aggravating role enhancement applies to Tocco's Versaci Gambling Operation offense level than we concluded applied to Tocco's Hobbs Act conspiracy offense level. However, Tocco's role in the former offense was greater: whereas Nove Tocco and Paul Corrado organized and were the primary participants in the Hobbs Act extortion conspiracy, Tocco was the organizer of the Versaci Gambling Organization. *See* U.S.S.G. § 3B1.1, commentary, applic. note 4 ("In distinguishing a leadership and organizational role from one of mere management or supervision . . . [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.").

the property to be forfeited and the RICO violation." *Corrado III*, 227 F.3d at 552.[10]  We then held that:

> it was clear error for the district court to deny forfeiture against Jack Tocco and [Anthony] Giacalone, jointly and severally, for the profits that the members of the enterprise shared from the sale of the Edgewater Hotel. The continuing activities were related to the illegal purposes of the conspiracy charged, and Giacalone's and [Paul] Corrado's personal involvement confirms that the Cosa Nostra was involved in obtaining these illegal proceeds.

*Id.* at 556.  Therefore, in a prior opinion, we have held that Tocco directly or indirectly benefitted from the Edgewater Hotel racketeering activities and that these activities were taken in furtherance of the RICO conspiracy for which Tocco was convicted.

Under the law of the case doctrine, generally we may not reconsider determinations made by this court at a prior stage of the litigation. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 276 F.3d 876, 879 (6th Cir. 2002).  The government's forfeiture action was based upon Tocco's conviction, and we previously held that "the criminal forfeitures sought in this case constitute a part of the defendants' sentences . . . ." *Corrado III*, 227 F.3d at 551.  We are thus bound in this appeal by the holdings we made both in Tocco's previous direct appeal and in the appeal involving Tocco's and his codefendants' forfeiture.  Because we previously held that the district court clearly erred in denying forfeiture against Tocco for the Edgewater Hotel activities, we believe that we must now hold that the district court also clearly erred in concluding that the Edgewater

---

[10]18 U.S.C. § 1963(a)(1) & (3) provide that:  "Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States . . . any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962."

*Callanan v. United States*, 881 F.2d 229, 234 (6th Cir. 1989), *cert. denied*, 494 U.S. 1083 (1990).  Therefore, we believe that Tocco's conviction for the Hobbs Act conspiracy serves the function of a special verdict on that predicate act; on the basis of Tocco's conviction for the Hobbs Act conspiracy alone, then, the district court should have included the Hobbs Act conspiracy as relevant conduct in calculating Tocco's Count 1 RICO conspiracy base offense level. *See Tocco*, 200 F.3d at 432 ("the district court ignored the fact that the jury found Tocco guilty on Count Six, the Hobbs Act violation").[13]

We concede, however, that the Hobbs Act conspiracy and the Count 1 RICO conspiracy could *theoretically* be independent.  We can imagine a situation in which a person such as Tocco engaged in different conspiracies with different persons.[14]  But, in this case, we have already held that the Hobbs Act conspiracy was part of the Count 1 RICO conspiracy.  In the government's appeal of the district court's forfeiture decisions, we held that "the district court committed clear error in failing to hold Jack Tocco and [Anthony] Giacalone jointly and severally liable for forfeiture of the

---

[13]Pursuant to U.S.S.G. § 1B1.3(a)(1)(A), relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

[14]In other words, a criminal conviction on a count regarding another conspiracy in addition to a criminal conviction on a RICO-conspiracy count does not *necessarily* require that the district court find the defendant accountable for the non-RICO conspiracy as relevant conduct for the purpose of determining the base offense level for the RICO conspiracy. *See* U.S.S.G. § 1B1.3, commentary, applic. note 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.  Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.").

the relationship(s) and interactions between Nove Tocco, Paul Corrado, on the one hand, and Jack Tocco, on the other, that Nove Tocco and Paul Corrado carried out their "street tax" extortions in spite of the resist[a]nce and displeasure expressed consistently and in various ways by the older members of the Count 1 RICO conspiracy.

J.A. at 233.  We conclude that the district court erred in not including the Hobbs Act conspiracy as relevant conduct for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.

The district court found that the Hobbs Act conspiracy was "independent" of the Count 1 RICO conspiracy because the court found that Nove Tocco and Paul Corrado carried out the street tax extortion without Jack Tocco's approval.  We note at the outset that this finding seems directly to contradict our previous conclusion that Tocco had a supervisory role in the Hobbs Act conspiracy.  In our first opinion, as we explained above, we held that the district court clearly erred in finding that Tocco did not have a supervisory role in the Hobbs Act conspiracy, and we instructed the district court to apply a three-level aggravating role enhancement on remand.  *See Tocco*, 200 F.3d at 432.  However, regardless of Tocco's role in the Hobbs Act conspiracy, we conclude that the Hobbs Act conspiracy should be included as relevant conduct for the purposes of Tocco's Count 1 RICO conspiracy base offense level on the facts of this case.

The Count 6 Hobbs Act conspiracy is listed as "underlying racketeering activity" in the Count 1 RICO conspiracy indictment, and Tocco was convicted of the Hobbs Act conspiracy.  As we explained above, because the jury verdict for Count 1 was general, it is impossible to know whether the jury found that the Count 6 Hobbs Act conspiracy constituted a predicate act of Tocco's for the Count 1 RICO conspiracy.  But we have held that "other verdicts of the same jury may serve the function of a special verdict on the predicate acts, where those other verdicts necessarily required a finding that the RICO defendant had committed the predicate acts."

Hotel activities were not reasonably foreseeable acts in furtherance of the RICO conspiracy.  Therefore, the district court also erred in not including the Edgewater Hotel activities as relevant conduct for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.

We instruct the district court on remand to include the Edgewater Hotel activities as an underlying offense in calculating Tocco's Count 1 RICO conspiracy base offense level.

### 3. Bowman Murder Conspiracy

The district court concluded that the Bowman murder conspiracy was not underlying racketeering activity for the purposes of determining Tocco's Count 1 RICO conspiracy base offense level.  The court found that Tocco had no direct involvement in the murder conspiracy and that the conspiracy was not a reasonably foreseeable act in furtherance of the criminal activity jointly undertaken by Tocco and his codefendants.  We do not believe these findings are clearly erroneous.  First, the only evidence that Tocco was directly involved in the Bowman murder conspiracy was Nove Tocco's testimony that when he and Paul Corrado presented their plan to kill Harry Bowman to Paul's uncle, Anthony Corrado, Anthony said that "they," meaning Anthony and Jack Tocco, would control the matter.  J.A. at 2243-44 (Nove Tocco Test. at Resentencing Hearing).  However, it is unclear from this testimony what "control" means, and, as the government concedes, other evidence indicates that instead of *causing* Paul Corrado and Nove Tocco to plan to murder Bowman, Jack Tocco actually *prevented* them from killing Bowman.[11]

_____

[11] Two FBI agents testified at trial that after listening to conversations between Nove Tocco and Paul Corrado in which they discussed the possibility of injuring law enforcement agents when carrying out their plan to murder Bowman, the FBI agents went to Jack Tocco and told him that if any law enforcement agent was injured, the FBI would hold him responsible.  Forty-eight hours after the FBI agents spoke with Jack

Second, this same evidence could also demonstrate that the Bowman murder conspiracy was not reasonably foreseeable conduct in furtherance of Jack Tocco's jointly undertaken criminal activity with Nove Tocco and Paul Corrado. Although we would not necessarily have interpreted the evidence in this way, we believe that the district court could plausibly have found that the Bowman murder conspiracy was not in the scope of the criminal activity Jack Tocco agreed to undertake with Nove Tocco and Paul Corrado. As we have explained, "in order to hold a defendant accountable for the acts of others [under U.S.S.G. § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *Campbell*, 279 F.3d at 399-400 (quoting *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995)). We have further stated that:

> In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation.

*Id*. at 400 (quotation omitted). Thus, the district court could have found in this case that because Jack Tocco prevented Nove Tocco and Paul Corrado from going through with their plan to murder Bowman, the murder conspiracy was not in the scope of Jack Tocco's agreement to conspire with Nove Tocco and Paul Corrado.

---

Tocco, Nove Tocco and Paul Corrado were informed of the FBI's warning to Jack Tocco and agreed to "lay low." J.A. at 742.

**4. Hobbs Act Conspiracy**

The district court concluded that the Hobbs Act conspiracy was not underlying racketeering activity for the purpose of calculating Tocco's Count 1 RICO conspiracy base offense level.[12] Specifically, the district court stated that:

> The court having considered all the evidence, listened to and observed all witnesses at trial, listened to hours of tape recordings almost entirely of conversations between Nove Tocco and Paul Corrado, been present at the testimony this year of Nove Tocco, all of which it views in context against the imperative fundament of Jack Tocco's conviction on Counts 1, 2, and 6, concludes and finds that the "street tax" extortions of Nove Tocco and Paul Corrado were indeed independent of the overall Count 1 RICO conspiracy of which Jack Tocco was convicted and that therefore those extortionate acts of Nove Tocco and Paul Corrado are not relevant conduct for the purpose of offense level calculations as to Jack Tocco under Count 1.

> Indeed, the court can only conclude from the lengthy consideration that it has given all the evidence related to

---

[12]The district court refers to this as "merg[ing]" Count 6 into Count 1. J.A. at 234. If a district court finds, after a jury verdict, that convictions are duplicitous or multiplicitous and therefore in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, the court may "merge" the convictions in the sense of vacating the duplicitous or multiplicitous convictions. *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990); *see also Ball v. United States*, 470 U.S. 856 (1985). However, Tocco's conviction under RICO and his conviction under the Hobbs Act are not duplicitous; we have long maintained that the imposition of consecutive sentences for violations of RICO and its accompanying predicate offenses does not violate the Double Jeopardy Clause. *See United States v. Sutton*, 700 F.2d 1078, 1081 (6th Cir. 1983). Therefore, had the district court concluded that the Hobbs Act conspiracy was relevant conduct for the purposes of calculating Tocco's offense level for the Count 1 RICO conspiracy conviction, the court still should have independently calculated Tocco's offense level for the Count 6 Hobbs Act conspiracy conviction.