**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Robert J. COYLE; Alfred Rotiroti,
Defendants–Appellees.**

Nos. 02–3593, 02–3621.

United States Court of Appeals,
Sixth Circuit.

Feb. 9, 2004.

Before RYAN, MOORE, and ROGERS, Circuit Judges.

RYAN, Circuit Judge.

These are the unusual criminal cases in which the government appeals sentences it believes are too lenient. The government claims the district court clearly erred in its determination of the amount of loss attributable to the defendants and in its failure to apply a number of enhancements to the defendants' offense levels. For the reasons set forth below, we **AFFIRM** in part, **VACATE** in part, and **REMAND** the cases for further proceedings.

## I.

Robert J. Coyle and Alfred Rotiroti were each indicted on one count of conspiracy to make false statements and seven counts of making false statements, both with respect to matters within the jurisdiction of the United States, in violation of 18 U.S.C. §§ 1001 and 2. After a bench trial, Coyle and Rotiroti were convicted on four counts of making false statements and acquitted on the remaining counts. The district court sentenced each defendant to six months' imprisonment followed by two years of supervised release and ordered each of them to make joint and several restitution in the amount of $43,584.

Coyle and Rotiroti were convicted and sentenced as a result of their participation in a scheme to defraud the Department of Housing and Urban Development (HUD). Specifically, they were convicted of making false statements to HUD in connection with the Department's Section 203(k) program, through which HUD subsidizes the repair and resale of dilapidated residential housing by guaranteeing mortgages in an amount sufficient to cover both the price of a piece of property and the cost of necessary repairs.

A program borrower must work with a HUD consultant to obtain approval for a Section 203(k) loan. Once a borrower obtains approval for a loan, the lender disburses an amount sufficient to cover the acquisition of a piece of property, together with any applicable fees, and places the balance in an escrow account, from which periodic draws are made to pay contractors for approved repairs.

A draw down can occur only after a "draw inspection" has been conducted by the HUD consultant, who becomes the inspector for the lender. The HUD consultant/inspector must review the work that has been done, certify the percentage of the total repair plan completed, and certify the dollar amount to be drawn from the escrow account. As an inspector, the HUD consultant is a fiduciary of HUD and the lender, and he is responsible for ensuring that the general contractor has completed repairs in a proper fashion before he recommends the release of escrow funds. The borrower must also sign off on the repairs before the general contractor can be paid.

Faith Housing, Inc. was a registered, non-profit organization that began participating in the Section 203(k) program in 1995. Rotiroti acted as Faith Housing's vice president and construction manager. He signed HUD documents, in which he certified that repairs had been performed and the costs indicated were accurate. Coyle was an independent HUD consultant who gave rough estimates of the cost of needed repairs for certain properties. He served as the HUD inspector on Faith's properties in Ohio and signed the corresponding HUD certifications.

The fraud alleged in the indictment operated as follows: Faith Housing over-mortgaged property and caused repairs

not to be done. Coyle and Rotiroti participated in this scheme by falsely certifying that repairs had been completed. These false certifications allowed Faith Housing to make draws on numerous escrow accounts to pay for repairs that had not been performed. Faith Housing then diverted the "excess" funds.

The government argued at sentencing that the correct loss calculation for Coyle was $116,728.01, based on the amount of money Faith Housing embezzled in connection with all of its Ohio properties. Although the government argued at sentencing that the proper loss calculation for Rotiroti should include a portion of HUD's nationwide loss in addition to HUD's $116,728 loss from the Ohio properties, it abandoned this argument on appeal. At sentencing, the government argued that Rotiroti's adjusted offense level should include enhancements for his leadership role and his misrepresentation that he was acting on behalf of a charitable organization, and that Coyle's adjusted offense level should include enhancements for his abuse of a position of trust and his obstruction of justice by perjuring himself at trial. Finally, Coyle's presentence report (PSR) recommended a two-level enhancement for his use of the "special skill" of a certified real estate appraiser in the commission of the offenses.

The district court declined to adopt the government's loss calculation and sentence enhancement recommendations. Specifically, the court rejected the argument that Rotiroti's sentence should be enhanced for his alleged leadership role in the offenses, finding that the government failed to prove by a preponderance of the evidence "who was being directed" and "how things were operating." The court also found that the government failed to prove by a preponderance of the evidence that Coyle obstructed justice or used the special skill of

a certified real estate appraiser in the commission of the offenses.

The district court found that each defendant had a criminal history category of I and a base offense level of six; it then applied a six-level enhancement based upon a loss calculation of $43,584. After applying the 2001 Sentencing Guidelines, the court found an adjusted offense level of 12 and a sentencing range of 10–16 months for each defendant. The court made no findings, however, regarding (1) whether Rotiroti misrepresented himself as acting on behalf of a charitable organization, (2) whether Rotiroti's crimes involved more than 10 victims, or (3) whether Coyle abused a position of trust in the commission of his crimes.

## II.

On appeal, the government argues that the district court clearly erred in calculating the amount of loss attributable to the defendants and in failing to enhance their sentences as the government requested.

## A.

Loss calculation is a factual determination that will not be set aside unless this court concludes that it is clearly erroneous. *See United States v. Comer*, 93 F.3d 1271, 1285 (6th Cir.1996). On numerous occasions, we have stated: "To the extent that one challenges the district court's calculation of loss, . . . the appellant bears the heavy burden of persuading the reviewing court that 'the evaluation of the loss was not only inaccurate, but was outside the realm of permissible computations.'" *United States v. Logan*, 250 F.3d 350, 370 (6th Cir.2001) (quoting *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir.1994)). Nevertheless, "[t]he district court's definition of loss is a question of law to be reviewed *de novo*," *id.*, as is its application of the guidelines to the facts. *See United*

*States v. Tocco*, 306 F.3d 279, 284 (6th Cir.2002), *cert. denied*, — U.S. —, 123 S.Ct. 2573, 156 L.Ed.2d 602 (2003).

■ "Section [2B1.1] of the [2001] Guidelines governs the calculation of loss for offenses involving fraud or deceit. That section begins by assigning a base offense level of six, and then increasing the base offense level by the amount of loss." *Logan*, 250 F.3d at 370. This court has clearly stated that "[l]oss under § [2B1.1] is not the potential loss, but is the actual loss to the victim. . . ." *Id.* (internal quotation marks and citation omitted). Here, the district court properly defined the loss to include only the embezzled repair money and not the money that was actually spent on repairs.

Characterizing this as "a very difficult case," the district court found that the government failed to prove by a preponderance of the evidence that the loss attributable to the defendants was greater than $43,584. Although we are uncertain how the district court arrived at this particular figure, any error in calculation is harmless given the facts of this case. Under the 2001 Guidelines, any loss amount between $30,001 and $70,000 carries the same increase in offense level. *See* U.S.S.G. § 2B1.1(b)(1) (2001). Thus, while the precise figure is not entirely free from doubt, we cannot say, on the record before us, that the district court's finding of loss was outside the realm of permissible computations. *See Logan*, 250 F.3d at 370. Accordingly, we affirm the district court's loss calculation.

### B.

The government argues that the district court clearly erred in refusing to enhance Rotiroti's sentence for his alleged leadership role in the offenses. It is well settled that "[t]he government must establish the facts supporting the enhancement for a defendant's aggravating role in an offense

by a preponderance of the evidence," *United States v. Bennett*, 291 F.3d 888, 897 (6th Cir.2002), and the government acknowledges that we will reverse a district court's factual findings regarding a defendant's role "only if they are clearly erroneous," *id.* Application of the guidelines to the facts is reviewed *de novo. Id.*

The Sentencing Guidelines provide, in relevant part, for a two-level enhancement in a defendant's offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [that involved one or more, but less than five other participants, or was not otherwise extensive]." U.S.S.G. § 3B1.1(c) (2001).

■ The district court found that the government failed to prove by a preponderance of the evidence that the leadership role enhancement applied because the government failed to show "who was being directed" and "how things were operating." The government did not argue at the sentencing hearing that the leadership role enhancement should apply because Rotiroti directed Coyle. Instead, it chose to rely on the argument that Rotiroti "was obviously a leader of some sort" because he "was the vice-president in charge of construction " We find no clear error in the district court's finding that the government failed to carry its burden of proof.

To the extent that the government *now* seeks to object to the sentence imposed by the district court based on Rotiroti's alleged direction of Coyle, that objection has been waived. "Generally, a failure to object at sentencing forfeits any challenge to the sentence on appeal." *United States v. Barajas–Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). Nevertheless, we have discretion to review a sentence for plain error, but no obligation to do so. *Id.* Generally, this court's discretion is exercised "only if the error seriously affect[s] the fairness, integrity or public reputation of judicial pro-

ceedings." *Id.* (internal quotation marks and citations omitted).

We decline to exercise our discretion here to review Rotiroti's sentence for plain error based on an objection raised for the first time on appeal. Accordingly, the district court's decision not to enhance Rotiroti's sentence for his alleged leadership role in the offenses is affirmed.

### C.

Next, the government argues that Rotiroti's sentence should have been enhanced because he falsely represented that he was acting on behalf of a charitable organization. The Sentencing Guidelines provide, in pertinent part: "If the offense involved ... a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency ..., increase by 2 levels." U.S.S.G. § 2B1.1(b)(7)(A) (2001).

The district court made no finding as to whether Rotiroti misrepresented himself as acting on behalf of a charitable organization, although the government specifically raised the issue at the sentencing hearing and objected to the absence of the enhancement in Rotiroti's PSR. After the district court announced the sentence it intended to impose, the government preserved its objection based on Rotiroti's alleged misrepresentation that he acted on behalf of a charitable organization.

Federal Rule of Criminal Procedure 32 provides that, at sentencing, a district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B) (formerly Fed.R.Crim.P. 32(c)(1)). We have required literal compliance with Rule 32(i)(3)(B) because "it helps to ensure that defendants are sentenced on

the basis of accurate information and provides a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case." *United States v. Stovall,* 337 F.3d 570, 573 (6th Cir.) (internal quotation marks and citations omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 454, 157 L.Ed.2d 328 (2003).

■ Because the district court failed to rule on this controverted matter and made no finding that a ruling was unnecessary either because the matter would not affect sentencing, or because the court would not consider the matter in sentencing, remand is appropriate. Among other things, the district court must determine whether Faith Housing was a "charitable ... organization" as used in U.S.S.G § 2B1.1(b)(7)(A) (2001).

### D.

The government also contends that Rotiroti's sentence should have been enhanced two levels because his crime involved more than 10 victims. The Sentencing Guidelines provide, in pertinent part: "If the offense ... involved more than 10, but less than 50, victims ..., increase by 2 levels." U.S.S.G. § 2B1.1(b)(2)(A) (2001). The government raises this issue for the first time on appeal.

As the government failed to raise the issue at sentencing, it has forfeited any challenge to Rotiroti's sentence on this ground. *See Bennett,* 291 F.3d at 899; *Barajas–Nunez,* 91 F.3d at 830. The government's argument that "[b]ecause the district court never addressed the issue, the government never had an opportunity to object" is without merit. The government had at least five opportunities to raise the issue, but at each turn it failed to do so. The government failed to object to the absence of this enhancement in Rotiroti's PSR, failed to raise the issue when

presenting its case at sentencing, twice failed to raise the issue when the district court specifically inquired whether it had "overlook[ed] something" or whether there was "[a]nything further," and failed to include this ground when it preserved its objections for appeal.

We decline to exercise our discretion in this instance to review Rotiroti's sentence for plain error based on an objection raised for the first time on appeal.

### E.

With regard to Coyle's sentence, the government argues that because Coyle committed perjury at trial, the district court clearly erred in failing to enhance his sentence for obstructing justice. The Sentencing Guidelines provide, in pertinent part:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (2001).

We apply "the clear error standard ... for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *United States v. Jackson–Randolph*, 282 F.3d 369, 390 (6th Cir.2002). But the district court's interpretation of the guidelines is reviewed *de novo*. *See United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir.2002).

The sole issue before the district court, with respect to this assignment of error, was whether Coyle committed perjury at trial. The district court acknowledged the inconsistency in Coyle's testimony, but af-

ter carefully assessing the evidence, including the considerations of motivation and memory, it concluded that the government had not shown an obstruction of justice by a preponderance of the evidence. We have examined the record and cannot say that the district court clearly erred. Accordingly, we affirm the district court's decision.

### F.

Finally, the government argues that the district court clearly erred by failing to enhance Coyle's sentence for his alleged abuse of a position of trust. The Sentencing Guidelines provide, in pertinent part: "If the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3 (2001).

The district court did not make a determination whether Coyle abused a position of trust in the commission of these offenses, although the government specifically raised the issue at sentencing. After the district court announced the sentence it intended to impose, the government preserved its objection based on Coyle's alleged abuse of a position of trust.

As discussed above, Federal Rule of Criminal Procedure 32 requires that, at sentencing, a district court rule on any disputed or controverted matter "or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B).

As the district court failed to rule on this controverted matter and made no finding that a ruling was unnecessary either because the matter would not affect sentencing, or because the court would not consider the matter in sentencing, remand is appropriate. The district court should

consider whether this enhancement is appropriate in light of Note One of the commentary to Section 3B1.3, which states, in part:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3, comment. (n.1).

### III.

For the foregoing reasons, we **AFFIRM** the district court's loss calculation and its findings with respect to the leadership role enhancement for Rotiroti, the multiple victim enhancement for Rotiroti, and the obstruction of justice enhancement for Coyle. Nevertheless, we conclude that the district court's failure to comply with the provisions of Fed.R.Crim.P. 32, with respect to the disputed enhancement of Rotiroti's sentence for his alleged misrepresentation that he acted on behalf of a charitable organization and the disputed enhancement of Coyle's sentence for his alleged abuse of a position of trust. requires that both sentences be **VACATED** and the cases be **REMANDED** for compliance with Rule 32 and resentencing.